1
2                                                                                              **O**
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT
9                             CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  JENNIFER GARNICA, an individual, | Case No.:  2:22-cv-06900-MEMF-BFM |
| 12                         Plaintiff, | **ORDER GRANTING GUERRERO'S REQUEST FOR JUDICIAL NOTICE,** |
| 13              v. | **DENYING BAKHESHI'S REQUEST FOR JUDICIAL NOTICE, GRANTING IN PART** |
| 14 | **COUNTY DEFENDANTS' MOTION TO** |
| 15  COUNTY OF LOS ANGELES, a public entity; DIANA LARA, an Individual; VERONICA | **DISMISS, GRANTING GUERRERO'S MOTION TO DISMISS, AND GRANTING** |
| 16  TORREZ, an Individual; REBECCA CASILLAS, an Individual; SHANNA HOPE | **BAKHESHI'S MOTION TO DISMISS [ECF NOS. 9, 24, 40]** |
| 17  RAMPLEY, an Individual; VASONNE MCDONALD, an Individual; CATHERINE | |
| 18  VUKSANOVIC, an Individual; STEPHANIE ASATRYAN, an Individual; PORCHE HILL, | |
| 19  an Individual; SHANNON MORRIS, an Individual; LAN FONTES, an Individual; | |
| 20  LAURA ISABEL GUERRERO, an Individual; ALDO MARIN, an Individual; EDWARD | |
| 21  FITHYAN, an Individual; GABRIELLA VILLAGOMES, an Individual; PADRIS | |
| 22  BAKHESHI, an Individual, DEBORAH RAMIREZ, an Individual, TIM MCTIGHE, an | |
| 23  Individual; BOBBY CAGLE, an Individual; AND DOES 1 through 100, inclusive, | |
| 24 | |
| 25                         Defendants. | |
| 26 | |

27
28

1

1    Before the Court are three Motions to Dismiss, filed by (1) Defendants County of Los

2    Angeles, Diana Lara, Veronica Torrez, Rebecca Casillas, Shanna Rampley, Vasonne McDonald,

3    Catherine Vuksanovic, Stephanie Asatryan, Porsha Hill, Shannon Morris, Lan Fontes, Deborah

4    Ramirez, Aldo Marin, Edward Fithyan, and Tim S. McTighe (collectively, the "County

5    Defendants") (ECF No. 9); (2) Defendant Laura Guerrero (ECF No. 24); and (3) Defendant Padris

6    Bakheshi (ECF No. 40). Also before the Court are a Request for Judicial Notice filed by Defendant

7    Laura Guerrero (ECF No. 24-2) and a Request for Judicial Notice filed by Defendant Padris

8    Bakheshi (ECF No. 40-3).

9    For the reasons stated herein, the Court GRANTS Laura Guerrero's Request for Judicial

10   Notice (ECF No. 24-2), DENIES Padris Bakheshi's Request for Judicial Notice (ECF No. 40-3),

11   GRANTS IN PART the County Defendants' Motion to Dismiss (ECF No. 9), GRANTS Laura

12   Guerrero's Motions to Dismiss (ECF No. 24), and GRANTS Padris Bakheshi's Motion to Dismiss

13   (ECF No. 40).

14                                          **BACKGROUND**

15   **I.     Factual Background[1]**

16   Plaintiff Jennifer Garnica ("Garnica") is an individual residing in Los Angeles County,

17   California. Compl. ¶ 1.

18   Defendant County of Los Angeles (the "County") is a public entity. *Id.* ¶ 5. One subdivision

19   of the County is the Los Angeles County Department of Children and Family Services ("DCFS").

20   Defendants Diana Lara ("Lara"), Veronica Torrez ("Torrez"), Rebecca Casillas ("Casillas")

21   Shanna Hope Rampley ("Rampley"), Vosonne McDonald ("McDonald"), Catherine Vuksanovic

22   ("Vuksanovic"), Stephanie Asatryan ("Asatryan"), Porsche Hill ("Hill"), Shannon Morris

23

24

25

26   _____

27   [1] The factual allegations included in this section are taken from Plaintiff Jennifer Garnica's Complaint. ECF No. 1-1 ("Complaint" or "Compl."). For the purposes of this Order, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is

28   therefore not—at this stage—finding that they are true.

("Morris"), Laura Isabel Guerrero[2] ("Guerrero"), Aldo Marin ("Marin"), Edward Fithyan ("Fithyan"), Gabriella Villagomes ("Villagomes"), Tracy Bracken ("Bracken"), Padris Bakheshi[3] ("Bakheshi"), Deborah Ramirez ("Ramirez"), Lan Fontes ("Fontes"), Tim McTighe ("McTighe"), and Bobby Cagle[4] ("Cagle") are individuals, and are officers, agents, or employees of DCFS. *Id.* ¶¶ 6–24.

Garnica's daughter, PRG, was born in 2014. *Id.* ¶ 29. PRG's father is Jack Zeichick ("Zeichick"). *Id.* Garnica had primary custody of PRG from the time of PRG's birth until May 2016. *Id.*

DCFS began investigating PRG's home life in 2016 based on allegations of domestic violence and allegations that Zeichick was involved with drugs. *Id.* ¶ 31. A court issued a criminal protective order ("CPO") against Zeichick. *Id.* ¶ 33. During a monitored visit on August 22, 2018, in the presence of monitor Tashana McSwain, PRG made allegations that Zeichick possessed guns and intended to harm Garnica. *Id.* ¶ 34. Garnica reported to Defendant Lara that Zeichick had violated the CPO, and Lara was "peculiarly aggressive and haughty" to Garnica. *Id.* Garnica contacted a prosecutor regarding these issues. *Id.*

On September 10, 2018, a court heard argument and ordered that custody of PRG be given to Garnica. *Id.* ¶ 32. On September 13, 2018, a court held an emergency bail hearing regarding

---

[2] Guerrero asserts that she is not an employee of the County and is rather an employee of Children's Law Center of California. *See* ECF No. 63 at 8 ("Defendant Guerrero at all relevant times was an attorney employed by the Children's Law Center of California"). At this stage, the Court must treat Garnica's plausible allegations as true, including the allegation that Guerrero was employed by the County. *See* Compl. ¶ 15.

[3] The case caption on the Court's filing system refers to Bakheshi as "Brakheshi." Both Garnica and Bakheshi use Bakheshi rather than Brakheshi, and so the Court will do the same. *See* ECF No. 1-1 (Complaint against Padris Bakheshi); ECF No. 40 (Motion to Dismiss filed by Padris Bakheshi).

[4] There is no indication on the docket that Garnica ever served process on Defendants Villagomes, Bracken, and Cagle. These three have not filed any responsive pleadings, and this Order does not address whether Garnica stated a claim against them. The Court has separately issued an Order regarding the status of these Defendants. ECF No. 66.

1   Ziechick's alleged violation of the CPO. *Id.* ¶ 34. Lara "discredited PRG reporting about the guns"

2   and the court denied bail because of Lara's testimony.[5] *Id.*

3          On December 14, 2018, a further custody proceeding was held. *Id.* ¶ 36. Lara testified against

4   Garnica. *Id.* An audio recording of an interview Lara conducted of PRG was played in court, which

5   included statements from PRG that Ziechick injured PRG. *Id.* Lara asked PRG whether Garnica had

6   coached her, and PRG corrected Lara and denied this. *Id.* PRG was approximately four years old at

7   the time. *See Compl.* Garnica filed a police report against Lara shortly thereafter. *Id.* ¶ 37.

8          On April 25, 2019, Ziechick abducted PRG and announced on social media that he would

9   take PRG to foster care. *Id.* ¶ 38. Ziechick accused Garnica of being abusive. *Id.* Garnica reported

10   the abduction to the Redondo Beach police. *Id.*

11          On May 3, 2019, Casillas interviewed PRG. *Id.* ¶ 39. Garnica was suspicious of Casillas, in

12   light of the interactions with Lara, and caused the interview to be recorded without PRG's or

13   Casillas's knowledge. *Id.* PRG stated in the interview that Ziechick had guns, and despite prompting

14   from Casillas, PRG did not indicate that Garnica had ever coached her. *Id.* On May 14, 2019, Los

15   Angeles Police Department Officers interviewed PRG, and PRG reported abuse by Ziechick. *Id.* ¶

16   40. Casillas accused Garnica of coaching PRG. *Id.*

17          On September 19, 2019, an employee of PRG's school told PRG that Ziechick would pick

18   PRG up from school. *Id.* ¶ 41. PRG became frightened and told the employee that the last time PRG

19   was with Ziechick, Ziechick abused PRG. *Id.* The employee called the authorities.

20          On September 24, 2019, Torrez closed the investigation into Ziechick with the disposition

21   "Inconclusive for Allegations of Sexual Abuse for father" despite all witnesses except Ziechick

22   having given testimony supporting abuse. *Id.* ¶ 42. The next day, on September 25, 2019, Torrez

23   called Garnica and informed Garnica that "everyone in [Torrez's] office" "agrees" that Garnica had

24   coached PRG. *Id.* ¶ 43.

---

27   [5] It is unclear to the Court what was intended by this allegation. Although the Complaint states that "bail was
28   denied,"—which would mean that Ziechick was not permitted to be released—the context suggests that
Garnica is alleging the opposite, namely that Ziechick was either released or not prosecuted due to Lara's
allegedly false testimony.

On October 25, 2019, at Torrez's instruction, forensic interviewer Jennifer Dineen interviewed PRG. *Id.* ¶ 44. PRG again made allegations of abuse by Zeichick, including that Zeichick "hurt my private," that Zeichick "hits me a lot," and that PRG had been shown pornography. *Id.* The interview was video recorder. *Id.* Torrez later misrepresented what occurred in this interview, and falsely claimed that Garnica had refused to take PRG to the forensic interview. *Id.* Others, including the same employee from PRG's school, made statements and wrote letters supporting PRG's allegations of abuse. *Id.*

On July 20, 2020, a further custody hearing was held. *Id.* ¶ 47. McDonald interviewed PRG, who again reported abuse by Zeichick. *Id.* PRG's babysitter also reported abuse to McDonald. *Id.* McDonald wrote a report indicating that no suitable guardian was available for PRG, even though PRG's grandfather called McDonald to offer himself as a guardian and Garnica and Garnica's fiance Frank Ryan ("Ryan") were available. *Id.* At the hearing, the attorneys for the state were in communication with McTighe, who relayed accusations of coaching from the others. *Id.* The attorneys for the state relied on DCFS and did not do their own investigation. *Id.* The court ordered that PRG not be released to Zeichick and released PRG to foster care. *Id.*

On July 22, 2020, McDonald interviewed foster mother Vera Mallet ("Mallet"). *Id.* ¶ 48. McDonald falsely reported Mallet's words and indicated that Mallet had said Garnica coached PRG. *Id.* Garnica's attorney interviewed Mallet, who confirmed that McDonald had lied, and also stated that PRG was terrified of Zeichick. *Id.*

On July 23, 2020, a family court judge removed PRG from the CPO against Zeichick. *Id.* ¶ 49. The Defendants caused this to occur and did not notify Garnica of the hearing. *Id.*

On August 1, 2020, Garnica informed supervisors Morris, Guerrero, McTighe, Fithyan, and Cagle via several emails of the other Defendants' behavior. *Id.* ¶ 51.

In August of 2020, several third parties including PRG's therapist informed Defendants of PRG's allegations of abuse by Zeichick. *Id.* ¶¶ 52, 53. Defendants omitted this information from their reports. *Id.* ¶ 53. In an August 21, 2020, hearing, a district attorney stated that "All DCFS doesn't want [Garnica] to have visitation." *Id.* ¶ 54.

In or around late August 2020, Morris, Rampley, Vuksanovic, Asatryan, Hill, McDonald, and others subjected PRG to medical procedures without court authorization or consent. *Id.* ¶ 55. These medical procedures included genitourinary examinations, taking urine samples, and vaccinations. *See id.* ¶¶ 90, 140(i). Garnica was not informed of these procedures. *Id.*

In October 2020, Fontes, Asatryan, Vuksanovic, and Morris were assigned to reinvestigate PRG's situation. *Id.* ¶ 56. Rather than conduct a neutral reinvestigation as required, they simply copied and pasted the false statements previously made by Lara, Casillas, and Torrez. *Id.* ¶ 57. While doing so, Fontes, Asatryan, Vuksanovic, and Morris communicated with Lara, Casillas, and Torrez. *Id.* Fontes, Asatryan, Vuksanovic, and Morris filed their report on November 30, 2020, and included the false statements made by Lara, Casillas, and Torrez, and also added other statements that they knew to be false. *Id.* ¶ 58.

On November 8, 2020, a court awarded Zeichick custody of PRG. *Id.* ¶ 62. Defendants recommended that Garnica receive no parental rights and no visitation rights. *Id.* The court ordered that Garnica receive only monitored visits. *Id.* Garnica appealed the decision. *Id.* As of the filing of the Complaint, that appeal was pending. *See id.*

In a December 16, 2020, hearing, Bakheshi represented Zeichick. *Id.* ¶ 59. Bakheshi delayed the trial and caused Garnica to lose money and lose her rights to PRG. *Id.*

In April 2021, Dr. Lynn Steinberg ("Steinberg") conducted monitored visitations with PRG. *Id.* ¶ 60. Steinberg reported that Rampley and Vuksanovic were aggressive to Steinberg, and that they pressured Steinberg not to bring up the subject of abuse. *Id.* Steinberg wrote a letter regarding these issues. *Id.* Rampley and Vuksanovic informed Steinberg that they had ultimate authority and canceled Steinberg's visits. *Id.*

On May 11, 2021, Garnica spoke to PRG for the first time in eleven months. *Id.* ¶ 61. Rampley and Asatryan falsified documents to ensure PRG was removed from Garnica. *Id.* Among other falsifications, Rampley and Asatryan stated that they were Licensed Social Workers, when in fact they were not. *Id.*

None of the Defendants have been disciplined by the County for their actions. *Id.* ¶ 63. As a matter of custom and practice, Defendants' behavior is deliberately left unaddressed by DCFS. *Id.*

DCFS workers regularly make false statements in juvenile court. *Id.* ¶ 112. The County regularly receives complaints about this conduct, and never investigates or disciplines its social workers. *Id.* ¶¶ 114, 115. DCFS workers also regularly request that medical procedures be performed on children without their parents present. *Id.* ¶ 137. DCFS fails to train its employees on the constitutional rights of children and parents. *Id.* ¶ 144.

## II. Procedural History

Garnica filed suit in Los Angeles County Superior Court on July 19, 2022. *See* ECF No. 1. Garnica brings six causes of action: (1) a 42 U.S.C. § 1983 ("Section 1983") claim for violations of the Fourteenth Amendment and the right to familial association, based on deception in presentation of evidence and unwarranted seizure of a child, against all Defendants (*see* Compl. ¶¶ 65–73); (2) a Section 1983 claim for retaliation in violation of the First Amendment and violations of the right to familial association against Lara, Casillas, Torrez, Rampley, Asatryan, Vuksanovic, Fontes, Hill, Morris, and Guerrero (*see* Compl. ¶¶ 74–86); (3) a claim for deprivation of constitutional rights based on non-consensual and unwarranted medical examinations against Lara, Casillas, Torrez, Rampley, Asatryan, Vuksanovic, Fontes, Hill, Morris, and Guerrero (*see* Compl. ¶¶ 87–95); (4) a Section 1983 claim for violation of civil rights based on deception in presentation of evidence and unwarranted seizure of a child against all Defendants (*see* Compl. ¶¶ 96–104); (5) a Section 1983 claim and *Monell* claim for a custom and practice of deception in the presentation of evidence and retaliation by DCFS social workers against the County (including separate "counts" for "Judicia Deception," "Unwarranted Medical Examinations," and "Unwarranted Seizure") (*see* Compl. ¶¶ 105–158); and (6) a California Civil Code § 52.1 ("Bane Act") claim against all Defendants[6] (*see* Compl. ¶¶ 159–160). Garnica filed her complaint *pro se. See id.* Defendants removed the action to this Court on September 23, 2022. ECF No. 1.

On September 30, 2022, the County, Lara, Torrez, Casillas, Rampley, McDonald, Vuksanovic, Asatryan, Hill, Morris, Fontes, Ramirez, Marin, Fithyan, and McTighe (collectively the

---

[6] The heading for the sixth cause of action states that is brought against "All Defendants," but also states it is brought against "County of Los Angeles and DOES 1 – 30" and not other Defendants. *See* Compl. at p. 39. As discussed in more detail below, this claim will be dismissed under either reading.

1  "County Defendants") filed a Motion to Dismiss. ECF No. 9 ("County Motion" or "County Mot.").

2  On December 12, 2022, Guerrero filed a Motion to Dismiss, along with a Request for Judicial

3  Notice. ECF No. 24 ("Guerrero Motion" or "Guerrero Mot."); ECF No. 24-2 ("Guerrero Request for

4  Judicial Notice" or "Guerrero RJN"). On February 6, 2023, Bakheshi filed a Motion to Dismiss,

5  along with a Memorandum of Points and Authorities and a Request for Judicial Notice. ECF No. 40

6  ("Bakheshi Motion" or "Bakheshi Mot."); ECF No. 40-1 ("Bakheshi MPA"); ECF No. 40-3

7  ("Bakheshi Request for Judicial Notice" or "Bakheshi RJN").

8          On March 20, 2023, Garnica requested a stay of the case and an extension of time to respond

9  to the Motions, noting that she had found attorneys to represent her, but the attorneys needed time to

10  respond. ECF No. 50. On March 30, 2023, the Court denied Garnica's request for a stay, but granted

11  Garnica until May 28, 2023, to respond to the Motions. ECF No. 52. The Court explained that

12  Garnica could file one consolidated opposition if she chose. *Id.*

13          On May 26, 2023, Garnica filed an Opposition to the three Motions with the assistance of

14  counsel. ECF No. 55 ("Opp'n"). On June 8, 2023, the County Defendants filed a Reply in support of

15  their Motion. ECF No. 59 ("County Reply"). Also on June 8, 2023, Bakheshi filed a Reply in

16  support of her Motion. ECF No. 58 ("Bakheshi Reply"). On June 9, 2023, Guerrero filed a Reply in

17  support of her Motion. ECF No. 63 ("Guerrero Reply").

18          The Court held a hearing on the Motions on October 5, 2023.

19                **REQUESTS FOR JUDICIAL NOTICE (ECF NOS. 24-2, 40-3)**

20     **I.**    **Applicable Law**

21          A court may judicially notice facts that: "(1) [are] generally known within the trial court's

22  territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy

23  cannot reasonably be questioned."  Fed. R. Evid. 201(b). Under this standard, courts may judicially

24  notice "undisputed matters of public record," but generally may not notice "disputed facts stated in

25  public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other

26  grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  Once a

27  fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive."

28  Fed. R. Evid. 201(f).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)). However, in considering preclusion on a motion to dismiss, courts may take judicial notice of court records "to determine what issues were actually litigated" in previous actions, regardless of whether the court records meet the *Corinthian Colleges* test described above. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) (court considering motion to dismiss took judicial note of court documents from state court litigation which were "helpful in considering matters related to preclusion in the state courts").

A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90.

## II.   Discussion

### A.   Guerrero's Request for Judicial Notice is granted (ECF No. 24-2).

Guerrero requests that the Court take notice of a decision of the California Court of Appeal in *In re: Paris G*, appellate case number B313465. *See* Guerrero RJN. This appears to be Garnica's appeal of the custody decision issued on November 8, 2020. *See* Compl. ¶ 62 ("[Garnica] has filed an Appeal regarding the Juvenile Courts [sic.] decision Appeal Case No. B313465."). Guerrero seeks to use this document to argue for issue preclusion. *See* Guerrero Mot. at 8 ("Additionally, the issues raised in the Complaint . . . are subject to issue preclusion, as they have already been adjudicated against Garnica in a decision of the California Court of Appeal on November 15, 2022, in *In re: Paris G.*, California Court of Appeal, Second District, Case No.: B313465.")

Because this document is a public record, which can be verified from sources whose accuracy cannot be questioned, it is appropriate for judicial notice. *See* Fed. R. Evid. 201(b). And

because the document will be used to determine whether preclusion applies, there is no rule against considering the document while deciding a motion to dismiss. *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6.

Accordingly, Guerrero's Request for Judicial Notice is GRANTED. The Court will take notice of the existence of this document and will take notice of the face that the California Court of Appeal made the decision stated therein.[7] But the Court will not take notice of any disputed facts within the document.

**B. Bakheshi's Request for Judicial Notice is denied (ECF No. 40-3).**

Bakheshi requests that the Court take notice of a Minute Order appointing Bakheshi as counsel for "Father" in a case involving Garnica. *See* Bakheshi RJN. The document is heavily redacted—from the version of the document submitted, it is not clear what the "Father['s]" name is, or whether the case is related to PRG as opposed to some other child. *See id.*

This document is not referenced in the Complaint. *See* Compl. Although the fact that Bakheshi represented Zeichick is referenced in the Complaint, the fact that Bakheshi was appointed by a court is not stated in the Complaint. *See id.* ¶ 59. Because this document is not referenced in the Complaint or central to the Complaint, it would not be appropriate to consider this document in deciding a motion to dismiss. *See Corinthian Colleges*, 655 F.3d at 998. Because the document cannot be considered, the Court will not take judicial notice of the document at this stage. S*ee Lee*, 250 F.3d at 689–90.

Unlike Guerrero, Bakheshi does not argue that this document should be used to show preclusion. Although Bakheshi argues that litigation privilege "precludes" this lawsuit, she does not raise issue preclusion, or otherwise argue that the "issues were actually litigated" previously. *See* Bakheshi MPA at 5; *Reyn's Pasta Bella*, 442 F.3d at 746 n.6. Rather, Bakheshi uses preclusion in its broader sense to mean that claims are *barred* as a matter of law. Accordingly, the way Bakheshi

---

[7] As discussed in more detail below, the Court did not reach Guerrero's preclusion argument and therefore did not consider this document in reaching its decision.

seeks to use this document does not fall within the exception to *Corinthian Colleges* for court records that will be used to show preclusion based on prior litigation. *See id.*

Bakheshi's Request for Judicial Notice is DENIED. This denial is without prejudice as to Bakheshi's right to request judicial notice of this same document at a later stage if she so desires.

## MOTIONS TO DISMISS (ECF NOS. 9, 24, 40)

### I.    Applicable Law

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### II.    Discussion

#### A. Garnica has failed to state a Section 1983 claim against Bakheshi for violation of the Fourteenth Amendment because she has failed to allege that Bakheshi acted under color of law (first and fourth causes of action).

In order to prevail on a Section 1983 claim, the plaintiff must show, among other elements, that the defendant was "acting under color of state law" when the defendant engaged in the alleged

1  conduct. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Garnica has not alleged facts

2  sufficient to show this for Bakheshi.

3       Bakheshi's involvement in the events alleged was solely as an attorney representing

4  Zeichick. *See* Compl. ¶ 59. Garnica alleges that Bakheshi's actions in this hearing "delayed the trial

5  and cost Jennifer money not to mention precious time with PRG." *Id.*

6       Although the Court is unaware of any binding authority concerning the question of whether

7  an attorney can be said to have "acted under color of state law" when representing one parent in a

8  dependency proceeding, the Court finds that the Supreme Court jurisprudence regarding a court-

9  appointed public defender is instructive. The Supreme Court has held that "a public defender does

10 not act under color of state law when performing a lawyer's traditional functions as counsel to a

11 defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Public

12 defenders may be acting under color of law when they act in capacities beyond a lawyer's traditional

13 functions, such as "making hiring and firing decisions," performing administrative functions, or

14 other inappropriate behavior such as extorting money from clients' families. *See id.* But when a

15 lawyer advocates for a client in a traditional lawyer's role, the lawyer is not acting under color of

16 state law, regardless of whether the lawyer is an employee of the state. *See id.*

17      Similarly, because Bakheshi played a traditional lawyer's role representing the interests of a

18 non-state party in court, this Court finds that Bakheshi was not acting under color of law.

19      Garnica appears to concede in her Opposition that this general rule is correct but argues that

20 an exception applies because Garnica alleged a conspiracy between Bakheshi and state actors. *See*

21 Opp'n at 22–23. Garnica cites *Radcliffe v. Rainbow Construction*, which Garnica argues stands for

22 the proposition that "where [a] private actor conspires or enters into joint action with a state actor,"

23 "a private actor may be held liable under Section 1983." Opp'n at 22–23 (citing *Radcliffe v. Rainbow*

24 *Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001)). But as *Radcliffe* makes clear, evidence is required to

25 support such a finding. *See id.* at 784 (affirming summary judgment for defendants, who were non-

26 state actors allegedly acting in conspiracy with state actors, where no "evidence of agreement and

27 concerted action was presented in the case before us."). A finding of a Section 1983 conspiracy

28

requires evidence of "an agreement or meeting of the minds to violate constitutional rights." *Id.* at 783.

Here, Garnica has not alleged any facts that would support a finding of a conspiracy between Bakheshi and any other defendant. Only one paragraph of the Complaint contains any factual allegations regarding Bakheshi—paragraph 59, which alleges Bakheshi's role in the December 16, 2020, custody hearing. *See* Compl. ¶ 59. Neither this paragraph nor the remainder of the Complaint contain any allegation that any other Defendant played a role in this hearing, or ever communicated with Bakheshi. Garnica points to several paragraphs where she alleges conclusory that "Defendants" (without detail on which Defendants) "conspired together to commit all of the acts and/or omissions alleged herein." *See* Compl. ¶ 28; *see also* Compl. ¶¶ 51, 68, 77, 81, 83, 99 (similar). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 Such conclusory and non-specific allegations are not sufficient to support a finding of a meeting of the minds to violate constitutional rights.

For this reason, Bakheshi's Motion (ECF No. 40) will be GRANTED as to the first and fourth causes of action. Garnica will be granted leave to amend her Section 1983 claims against Bakheshi, as further facts might be sufficient to show a conspiracy with state actors or that Bakheshi was acting under color of law.[8]

The Court need not reach Bakheshi's other arguments as to the Section 1983 claims.[9] If further facts are pleaded against Bakheshi, the Court will analyze Bakheshi's other arguments in the context of those further facts.

---

[8] Bakheshi argued in the hearing that this cause of action should be dismissed without leave to amend, because it is unlikely that further allegations could overcome Bakheshi's arguments, particularly on litigation privilege. The Court will nevertheless grant leave to amend, given the liberal standard for leave to amend, and will evaluate any further allegations once they are made. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d at 1031.

[9] Bakheshi argues that this Court would not have subject matter jurisdiction over any of the state claims against Bakheshi if it the Section 1983 claims against Bakheshi are dismissed. Bakheshi Mot. at 10-11. To the extent that Bakheshi is requesting that the Court decline to assert supplemental jurisdiction over any state claims in light of the dismissal of the federal claims, this request is denied as it appears clear that all of the allegations—state and federal, against the various Defendants—arise from the same nucleus of operative facts. *See* 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the

**B. The County cannot be vicariously liable under Section 1983 (first and fourth causes of action).**

The County argues that it cannot be vicariously liable under Section 1983 for the conduct of its employees. *See* County Mot. at 9–10 (citing *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690-91. Garnica concedes this point. *See* Opp'n at 24. Thus, the Section 1983 claims against the County fail, and the Court need only decide whether these causes of action state a claim against other Defendants. The Court will separately analyze whether the fifth and sixth claims—also brought against the County, and not based on Section 1983—sufficiently state claims.

**C. The statute of limitations does not bar claims against Lara, Torrez, and Casillas (first and fourth causes of action).**

The County Defendants argue that the statute of limitations bars all Section 1983 claims against Lara, Torrez, and Casillas. *See* County Mot. at 8–9. This argument fails.

The statute of limitations for a Section 1983 claim is "is the personal injury statute of limitations of the state in which the cause of action arose." *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011). The statute of limitations for personal injury actions in California is two years. *See* Cal. Civ. Proc. Code § 335.1. The time begins running on the date of injury, except in cases where the plaintiff is not aware of the injury or its cause until some later date. *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir. 1994)

Here, Garnica filed suit on July 19, 2022, so the suit would not be timely if the time began running prior to July 19, 2020. The County Defendants argue that all alleged wrongdoing by Lara, Torrez, and Casillas occurred prior to July 19, 2020 (and in fact prior to March 30, 2020). *See* County Mot. at 9. However, the time does not begin to run at the time of wrongdoing, it begins running at the time of injury. *See Ward*, 32 F.3d at 1407. According to the Complaint, PRG was sent to foster care on July 20, 2020. *See* Compl. ¶ 47. Later, Zeichick received custody of PRG on

---

district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III"); 28 U.S.C. § 1367(c) (court "may" decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction").

November 8, 2020, and Garnica received only monitored visits. *See id.* ¶ 62. Drawing all inferences

in favor of Garnica, these injuries are traceable to Lara's, Torrez's, and Casillas's alleged conduct.

Because these injuries occurred after July 19, 2020, Garnica's claims—which, as discussed, are

based on these injuries—are therefore not barred by the statute of limitations. Garnica also argues

that she is suffering an ongoing injury. *See* Opp'n at 23. The Court need not reach this issue, having

found that regardless of whether the injury is ongoing, it occurred within the period allowed by the

statute of limitations.

> **D. Garnica has adequately pleaded a claim against some Defendants under Section 1983 for violation of the right to familial association under the Fourteenth Amendment (first and fourth causes of action).**

Turning to the other Defendants, Garnica's first cause of action is a Section 1983 claim for

violations of the Fourteenth Amendment and the right to familial association, based on deception in

presentation of evidence and unwarranted seizure of a child. *See* Compl. ¶¶ 65–73. Similarly,

Garnica's fourth cause of is a Section 1983 claim for violation of civil rights based on deception in

presentation of evidence and unwarranted seizure of a child against all Defendants (*see* Compl. ¶¶

96–104).  The Court will analyze these two related causes of action together.[10] Taking her

allegations as true, Garnica has stated claims under both causes of action against Lara, Casillas,

Torrez, Fontes, Asatryan, Vuksanovic, and Morris, for the reasons described below.

"To prevail on a [Section] 1983 claim of deliberate fabrication, a plaintiff must prove that (1)

the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the

plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Custody of

one's children is a liberty interest, which, if deprived, would be sufficient for the second prong of

this test. *See Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("We have recognized on numerous

occasions that the relationship between parent and child is constitutionally protected."). Here,

Garnica made allegations that state a claim within the *Spencer* framework.

---

[10] These claims are functionally identical. The only significant difference is that the first cause of action
specifically points to the Fourteenth Amendment, while the fourth cause of action describes violations of
unspecified civil rights. *See* Compl. at pp. 15, 22. Both are claims under Section 1983, and both are based on
"Deception in the Presentation of Evidence and/or Unwarranted Seizure of a Child." *See id.*

First, Garnica made allegations which, if taken as true, are sufficient to show that DCFS officials had a motive to fabricate evidence. For instance, Torrez allegedly told Garnica that that "everyone in [Torrez's] office" "agrees" that Garnica had coached PRG. Compl. ¶ 43. Later, a district attorney, not alleged to be part of DCFS but alleged to have some insight into DCFS's attitude towards the case, allegedly stated that "All DCFS doesn't want [Garnica] to have visitation." Compl. ¶ 54. These allegations suggest that DCFS officials were attempting to deprive Garnica of custody of PRG. While these allegations alone do not show any fabrication of evidence, they are relevant to interpreting whether other allegedly false evidence was a deliberate fabrication.

Second, Garnica alleged that many DCFS officials fabricated evidence against Garnica, either by lying, omitting key facts, or otherwise deliberately undermined Garnica's evidence. When PRG allegedly reported that Zeichick had guns and intended to harm Garnica, Lara allegedly was aggressive to Garnica, and then allegedly "discredited PRG reporting about the guns" at Zeichick's bail hearing. *See id.* ¶¶ 34–37. When Casillas interviewed PRG and PRG allegedly again reported that Zeichick had guns, Casillas allegedly did not take this evidence seriously or act upon it, and allegedly instead accused Garnica of coaching PRG. *See id.* ¶ 39. After a forensic investigator interviewed PRG, Torrez allegedly misrepresented what PRG said in the interview, and allegedly claimed falsely that Garnica had refused to take PRG to the interview. *See id.* ¶ 44. McDonald allegedly stated falsely in a report that no suitable guardian was available for PRG. *See id.* ¶ 47. Ramirez allegedly signed this false report. *See id.* ¶ 21. McDonald allegedly falsely reported what occurred in a conversation with PRG's foster mother. *Id.* ¶ 48. After many people, including PRG's therapist, allegedly informed Defendants of abuse, Defendants allegedly omitted this information from reports. *See id.* ¶¶ 52–54. Fontes, Asatryan, Vuksanovic, and Morris were assigned to reinvestigate the situation, and instead of conducting a neutral reinvestigation, they allegedly communicated with Lara, Casillas, and Torrez, allegedly relied on false statements by Lara, Casillas, and Torrez, and allegedly added further false statements of their own. *See id.* ¶¶ 56–57. Drawing all inferences in favor of Garnica, these specific factual allegations are sufficient to state a claim that the Defendants named above fabricated evidence. The pattern of behavior and evidence of motivation to

lie make the allegations plausible at this stage. *See Iqbal*, 556 U.S. at 678 (describing plausibility standard).

Third, the fabricated evidence caused allegedly Garnica to lose custody of PRG and otherwise affected the disposition of various court proceedings. PRG was allegedly sent to foster care and then to Zeichick, and Garnica alleges that this was as a result of the evidentiary record that Defendants created. *See id.* ¶¶ 47, 62. This deprived Garnica of a protected interest—her relationship with her child. *See Quilloin*, 434 U.S. at 255.

To prevail on her claims, Garnica will eventually need to show that her allegations of fabricated evidence are true, and that this purportedly fabricated evidence was the cause of the custody decisions. But at this stage, drawing all inferences in favor of Garnica, she had stated a claim against at least certain defendants.

The Court finds that Garnica has stated a claim against all of the Defendants described above—Lara, Casillas, Torrez, McDonald, Ramirez, Fontes, Asatryan, Vuksanovic, and Morris. The County Motion will be denied as to the first and fourth causes of action for these Defendants.

However, Garnica has not stated a claim under these causes of action against the other remaining Defendants—Rampley, Hill, Guerrero, Marin, Fithyan, McTighe, and Guerrero. The only alleged involvement of Marin, Fithyan, and McTighe[11] is that Garnica allegedly emailed complaints to them, and although Garnica alleges that these three ratified others' behavior, she alleges no facts to support this legal conclusion. *See* Compl. ¶ 51; *see also Iqbal*, 556 U.S. at 678 (A court is "not bound to accept as true a legal conclusion couched as a factual allegation."). Hill, Guerrero, and Rampley[12] are not alleged to have fabricated any evidence or been involved in fabrication. *See* Compl. To the extent that Garnica seeks to use allegations of conspiracy to support claims against

---

[11] McTighe is also alleged to have "relied on" false reports by others, but there is no allegation that he knew they were false. *See* Compl. ¶ 47. His reliance on these reports occurred in July 2020, prior to when Garnica emailed him in August 2020. *See id.* ¶¶ 47, 51.

[12] Garnica alleges that Rampley falsified documents stating that Rampley was a licensed social worker when she was not but does not allege any specific falsehoods by Rampley about Garnica or PRG that caused Garnica harm. *See* Compl. ¶ 61.

these Defendants, she has not alleged sufficient facts that would support a finding "an agreement or meeting of the minds to violate constitutional rights" as required. *Radcliffe*, 254 F.3d at 783.

In sum, the County Motion is GRANTED as to the first and fourth causes of action for the County, Rampley, Hill, Marin, Fithyan, and McTighe. Guerrero's Motion is GRANTED as to the first and fourth causes of action. Garnica will have leave to amend her allegations against these Defendants, as further allegations might state a claim. The County Motion is DENIED as to the first and fourth causes of action for Lara, Casillas, Torrez, McDonald, Ramirez, Fontes, Asatryan, Vuksanovic, and Morris.

### E.  Garnica has failed to adequately state a claim for retaliation in violation of the First Amendment (second cause of action).

Garnica's second cause of action is a Section 1983 claim for retaliation in violation of the First Amendment and violations of the right to familial association against Lara, Casillas, Torrez, Rampley, Asatryan, Vuksanovic, Fontes, Hill, Morris, and Guerrero. *See* Compl. ¶¶ 74–86. To allege a First Amendment retaliation claim, Garnica must allege that: "(1) [she] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019). Garnica fails, at minimum, on the third prong.

Although Garnica alleges that she engaged in certain protected activity—including filing a police report and complaining to supervisors (*see* Compl. ¶¶ 37, 51)—and has alleged that her protected activity was a motivating factor for Defendants' actions (see Compl. 79), but the allegation that her activity was a "motivating factor" is conclusory. And the Complaint does not set forth a clear chronology that would permit this Court to draw an inference—even at this stage—of retaliation. Importantly, the Complaint does not allege any change in behavior *following* the protected activity. It fails to identify what complaints led to what retaliation and how. Accordingly, this claim fails. *See Capp*, 940 F.3d at 1053.

Garnica will be granted leave to amend, as further allegations might properly state a claim.

**F.  Garnica fails to adequately state a claim for violation of the constitutional right to remain free of non-consensual medical examinations against Lara, Torrez, Casillas, Fontes, or Guerrero (third cause of action).**

Garnica's third cause of action is a claim for deprivation of constitutional rights based on non-consensual and unwarranted medical examinations against Lara, Casillas, Torrez, Rampley, Asatryan, Vuksanovic, Fontes, Hill, Morris, and Guerrero. *See* Compl. ¶¶ 87–95. The County Defendants argue that this claim fails against Lara, Torrez, Casillas, and Fontes, but do not raise specific arguments regarding the other County Defendants (except general arguments under Rule 8, which will be addressed separately). *See* County Mot. at 15–16; County Reply at 10–11. Guerrero also argues that this claim fails against her. *See* Guerrero Mot. at 15–16.

"The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1161 (9th Cir. 2018). It is a violation of the constitution to perform medical examinations of a child "without notifying the parents about the examinations and without obtaining either the parents' consent or judicial authorization." *Id.*

The only allegation regarding this claim is in paragraph 55[13], which states that Morris, Rampley, Vuksanovic, Asatryan, Hill, and McDonald subjected PRG to unwarranted examinations. *See* Compl. ¶ 55. There are no allegations supporting a claim against Lara, Torrez, Casillas, Fontes or Guerrero. Accordingly, this claim fails against Lara, Torrez, Casillas, Fontes, and Guerrero.[14] Because the County Defendants have not argued that this claim falls short against Rampley, Asatryan, Vuksanovic, Hill, and Morris, the Court finds that this cause of action states a claim against those Defendants.

Accordingly, the County Motion is GRANTED as to the third cause of action for Lara, Torrez, Casillas, and Fontes, and Guerrero's Motion is GRANTED as to the third cause of action.

---

[13] Paragraph 140 adds some detail on what medical procedures the County generally performs, but does not add detail on which, if any, Defendant performed these procedures on PRG. *See* Compl. ¶ 140.

[14] Having found that all claims against Guerrero—the first, second, third, and fourth—will be dismissed, the Court need not reach Guerrero's other arguments. *See* Guerrero Mot. If further facts are alleged against Guerrero, the Court will analyze Guerrero's arguments against those specific facts but cannot do so without first seeing the further facts.

The County Motion is otherwise DENIED as to the third cause of action. Garnica will be granted leave to amend, as further facts might state a claim against Lara, Torrez, Casillas, Fontes, and Guerrero.

### G. Garnica's claims are adequately pleaded under Rule 8.

The County Defendants argue that Garnica's Complaint is a confusing "shotgun pleading" which does not give sufficient notice under Federal Rule of Civil Procedure 8. *See* County Mot. at 3–6. This argument fails.

Federal Rule of Civil Procedure 8 ("Rule 8") requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint should "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Where a plaintiff drafted a complaint without an attorney, as here, the complaint should be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 94.

Having reviewed Garnica's Complaint, the Court finds that the Complaint gives the Defendants fair notice of what is alleged and the grounds on which Garnica is entitled to relief. This is particularly true given Garnica's *pro se* status at the time of filing. Although the County Defendants allege that the Complaint is "unintelligible," the Court finds that the Complaint is intelligible, especially in light of Garnica's *pro se* status at the time of filing. The Complaint will therefore not be dismissed on the basis that it is confusing or otherwise fails to comply with Rule 8.

### H. The County Defendants have not asserted any other basis for dismissing the *Monell* claim (fifth cause of action).

Garnica's fifth cause of action is a Section 1983 claim and *Monell* claim for a custom and practice of deception in the presentation of evidence and retaliation by DCFS social workers against the County (including separate "counts" for "Judicia Deception," "Unwarranted Medical Examinations," and "Unwarranted Seizure"). The County moves to dismiss the Complaint as a whole but does not include any arguments specific to this cause of action. *See* County Mot.; County Reply. The Court reads the County Motion as only seeking dismissal of the fifth cause of action on

1  the basis of Rule 8. Having rejected that argument, the Court sees no basis on which to dismiss the

2  fifth cause of action.

3         For this reason, the County Motion is DENIED as to the fifth cause of action.

4       **I.  The sixth cause of action will be dismissed as to all Defendants.**

5         Garnica's sixth cause of action is a Bane Act claim. The Complaint states that this claim is

6  brought against only the County and against "All Defendants." *See* Compl. at 39. The Court will

7  analyze it as if brought squarely against all Defendants for completeness.

8         The County Defendants move to dismiss this claim on two grounds: (1) that a Bane Act

9  claim against the County is barred by the California Tort Claims Act because Garnica did not first

10  file a claim for damages with the County; and (2) that the Complaint fails to state sufficient facts for

11  liability against any other Defendant. *See* County Mot. at 17–19. Guerrero similarly argues that to

12  the extent that this claim is brought against her, it fails for lack of sufficient facts. *See* Guerrero Mot.

13  at 17. Bakheshi did not specifically address the sixth cause of action, but argued that all claims

14  against her are barred by California's litigation privilege. *See* Bakheshi MPA at 7–8.

15         First, with respect to Bakheshi's argument of litigation privilege, Garnica argued that

16  litigation privilege would not bar a Section 1983 claim but did not argue that a Bane Act claim

17  would not be barred. *See* Opp'n at 20–21. The Court reads this as a concession that the Bane Act

18  claim as currently pleaded is barred against Bakheshi. For this reason, the sixth cause of action will

19  be dismissed against Bakheshi. Similarly, Garnica made no attempt to rebut the County's argument

20  that this claim is barred against the County. *See* Opp'n. The sixth cause of action as pleaded will

21  therefore be dismissed against the County.

22         Regarding the other Defendants, the Court finds that Garnica has not alleged sufficient facts

23  to state a Bane Act claim. A Bane Act claim requires: "(1) intentional interference or attempted

24  interference with a state or federal constitutional or legal right, and (2) the interference or attempted

25  interference was by threats, intimidation or coercion." *Allen v. City of Sacramento,* 183 Cal. Rptr. 3d

26  654, 676 (Cal. App. 2015). Although the Complaint as a whole alleges some facts that could support

27  a finding of intentional interference with constitutional rights, the Bane Act claim does not identify

28  what rights it is based on and what threats, intimidation, or coercion were allegedly applied. *See*

Compl. ¶ 160. Garnica's Opposition suggests that the fear of losing her child was used to chill Garnica in the exercise of her First Amendment right to complain about the Defendants, Opp'n at 19, this theory is not supported by the Complaint itself. *See* Compl at 39. Garnica's Opposition does not argue that any such facts were pleaded. *See* Opp'n. For this reason, the Bane Act claim will be dismissed.

The County Defendants' Motion, Guerrero's Motion, and Bakheshi's Motion will all be GRANTED as to the sixth cause of action. Leave to amend shall be granted, as further facts might state a claim, and might overcome the County's and Bakheshi's arguments by showing that Garnica did file a claim for damages with the County or that litigation privilege should not apply.

## CONCLUSION

For the reasons stated herein, the Court Orders as follows:

1. Guerrero's Request for Judicial Notice (ECF No. 24-2) is GRANTED.

2. Bakheshi's Request for Judicial Notice (ECF No. 40-3) is DENIED.

3. Guerrero's Motion to Dismiss (ECF No. 24) is GRANTED as to all claims.

4. Bakheshi's Motion to Dismiss (ECF No. 40) is GRANTED as to all claims.

5. The County Defendants' Motion to Dismiss (ECF No. 9) is GRANTED IN PART:

    a. The first cause of action is dismissed against the County, Rampley, Hill, Guerrero, Marin, Fithyan, McTighe. The first cause of action survives against Lara, Casillas, Torrez, McDonald, Ramirez, Fontes, Asatryan, Vuksanovic, and Morris.[15]

    b. The second cause of action is dismissed against all County Defendants that it was brought against (Lara, Casillas, Torrez, Rampley, Asatryan, Vuksanovic, Fontes, Hill, and Morris).

    c. The third cause of action is dismissed against Lara, Torrez, Casillas, and Fontes. The third cause of action survives against Rampley, Asatryan, Vuksanovic, Hill, and Morris.

---

[15] The first cause of action is also dismissed against Guerrero and Bakheshi, as described separately above. The same is true for other causes of action below—Guerrero and Bakheshi are not listed under No. 5 because they are discussed separately above.

d.  The fourth cause of action is dismissed against the County, Rampley, Hill, Marin, Fithyan, McTighe. The fourth cause of action survives against Lara, Casillas, Torrez, McDonald, Ramirez, Fontes, Asatryan, Vuksanovic, and Morris.

e.  The fifth cause of action survives against the County (the only Defendant it was brought against).

f.  The Sixth cause of action is dismissed against all County Defendants.

6.  Garnica is GRANTED LEAVE TO AMEND all of her claims. If Garnica chooses to file an amended complaint, she must do so within thirty (30) days of the entry of this Order.

IT IS SO ORDERED.

Dated: October 10, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge